**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JEANETTE C.,**

**Plaintiff,**

**v.**

**Civil Action 2:25-cv-1463**
**Judge Michael H. Watson**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Jeanette C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability benefits ("DIB") and supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability determination and **REMAND** this matter pursuant to Sentence 4 of § 405(g).

## I. BACKGROUND

Plaintiff filed her applications in September 2023, alleging that she became disabled beginning September 2021. (R. at 431–32.) After Plaintiff's applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a hearing in January 2025

at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 239–69.) A vocational expert ("VE") also appeared and testified. On February 6, 2025, the ALJ issued an unfavorable determination, which became final on October 22, 2025, after the Appeals Council denied Plaintiff's request for review. (*Id*. at 19–38, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 6–9, ECF No. 8.)[1] The undersigned agrees.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on February 6, 2025. (R. at 19–38.) The ALJ initially determined that Plaintiff met the insured status requirements through December 31,

[1] Plaintiff additionally contends that the ALJ reversibly erred when assessing Plaintiff's subjective symptoms. (Pl.'s Statement of Errors 10–11, ECF No. 8.) Because the undersigned concludes that Plaintiff's first contention of error has merit, the Court need not reach this second contention of error.

2026. (*Id*. at 24.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 1, 2021. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: obesity; obstructive sleep apnea with a history of sleep paralysis; Raynaud's syndrome; polyarthritis; degenerative disc disease with a history of lumbar fusion; generalized anxiety disorder; depression with psychotic symptoms; posttraumatic stress disorder (PTSD); and obsessive-compulsive disorder. (*Id*. at 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently balance (as defined in the SCO); occasionally climb ramps and stairs, stoop, crouch, crawl, and kneel; and never climb ladders, ropes, or scaffolds. She should have no concentrated exposure to atmospheric conditions (as defined in the SCO); no exposure to unprotected heights and moving mechanical parts; and no commercial driving. She can understand, remember, and carry out simple tasks. She should have no work that requires satisfaction of production quotas or that involves assembly line pace. She can make simple work-related decisions. She can occasionally interaction with supervisors and coworkers, but never interact with the general public. She can deal with occasional changes in a routine work setting.

(*Id*. at 27.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff could not perform her past relevant work as a research specialist. (*Id*. at 33.) Relying again on the VE's testimony at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of merchandise marker, mail sorter, and collator operator. (*Id*. at 33–34.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 34.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. §§ § 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 6–9, ECF No. 8.) The undersigned concludes that this contention of error has merit.

**A. The Evaluation of Medical and Other Types of Evidence**

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and

---

[4] Because Plaintiff's applications were filed in 2023, they are subject to regulations governing applications filed after March 27, 2017.

nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. The Prior Administrative Findings**

On November 10, 2023, Audrey Todd, Ph.D., reviewed Plaintiff's file at the initial level. (R. at 278, 288.) In relevant part,[5] Dr. Todd found that Plaintiff had moderate limitations in her ability to understand and remember. (*Id*. at 277–78, 287–288.) She further found that Plaintiff "would do best in a work environment where tasks are simple and repetitive and a supervisor is available if clarification is needed." (*Id*. at 278, 288.)

At the reconsideration level, Irma Johnston, Psy.D., reviewed Plaintiff's file on May 22, 2024. (*Id*. at 302, 313.) She agreed with Dr. Todd's findings but found that Plaintiff had additional functional limits. (*Id*. at 301, 312.) Specifically, Dr. Johnston found that Plaintiff had moderate limits in her ability to concentrate and persist, and was "able to concentrate, persist and keep pace for simple tasks with brief, superficial interaction with others in a work setting" and could "adapt to a setting without a fast pace." (*Id*. at 302, 313.)

Dr. Johnston additionally found that Plaintiff had moderate adaptation limits. (*Id*.) Dr. Johnston further found that Plaintiff "would do best with routine tasks and low workplace pressures consistent with entry-level workplace" and that she could "adapt to infrequent changes." (*Id*.)

**C. The ALJ's Analysis**

The ALJ began by summarizing the reviewers' findings, writing as follows:

> The State agency psychological consultants, Audrey Todd, Ph.D., and Irma Johnston, Psy.D., stated that the claimant is limited to simple and repetitive tasks,

---

[5] Dr. Todd also found that Plaintiff had moderate concentration and persistence and adaptation limits but that Plaintiff did not have any functional work limits that resulted therefrom. (R. at 278,

> with a supervisor available for clarification (Ex. 2A, 3A, 7A, 8A). Dr. Johnston additionally stated that the claimant can concentrate, persist, and keep pace for simple tasks with brief, superficial interaction with others in a work setting, can adapt to a setting without a fast pace, and could do best with routine tasks and low workplace pressure consistent with entry-level workplace changes and infrequent changes (Ex. 7A, 8A).

(*Id*. at 32.)

The ALJ then determined that the reviewers' findings were only persuasive to the extent the reviewers found that Plaintiff had moderate limits. The ALJ wrote as follows:

> The consultants utilize non-vocationally defined terminology, including "brief" and "superficial," which limits the findings probative value. As such, they are ONLY persuasive to the extent they find that the claimant has no more than moderate psychological limitations. This is well supported by the consultative citation and discussion of the record, including mental health treatment through April 2024 (Ex. 7A/3). Furthermore, it is consistent with the overall record, including the claimant's presentation at the consultative examination and her stable mental health symptoms during periods of treatment (Ex. 5F, 12F).

(*Id*.)

As this discussion demonstrates, the ALJ adopted the reviewers' moderate limit findings but not their specific functional restrictions because they used what the ALJ characterized as "non-vocationally defined terminology," including the terms "brief" and "superficial" to describe Plaintiff's social interaction limits. (*Id*.) Plaintiff challenges that reason for discounting the reviewers' findings. And the undersigned agrees that the ALJ's stated reason was inadequate.

Although the ALJ stated that "superficial" lacks a vocational definition, the Sixth Circuit Court of Appeals has acknowledged that a superficial interaction limit is a well understood work limitation. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *4 (6th Cir. June 20, 2023) (quoting *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021) ("We find nothing wrong in the ALJ's use of the term 'superficial,' a 'well-recognized work-related limitation,' in the interrogatories to the vocational expert.")).

District Courts in the Sixth Circuit have also held that a limit to superficial interactions is understood as a limit regarding the quality[6] of a plaintiff's workplace interactions. *See, e.g.*, *Deana L. F. v. Comm'r of Soc. Sec.*, No. 2:25-CV-1121, 2026 WL 1587259, at *2 (S.D. Ohio June 3, 2026) ("The Undersigned agrees with those judges who have concluded that, at least with respect to the term 'superficial,' it is capable of being understood and translated into vocational limitations."); *Dawn V. v. Comm'r of Soc Sec.*, No. 1:25-CV-00570, 2026 WL 2874064, at *5 (S.D. Ohio Sept. 24, 2026) ("[T]his Court has repeatedly held that superficial interaction is a well-recognized, work-related limitation.'") (internal quotations omitted); *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (explaining that "'superficial interaction' is a well-recognized, work-related limitation"), *report and recommendation adopted sub nom.*, *Hutton v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Neal B. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-75, 2024 WL 963713, at *5 (S.D. Ohio Mar. 5, 2024) ("Contrary to the ALJ's initial conclusion, 'superficial' contact is a well-recognized work-related limitation."); *William H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00219, 2022 WL 4591304, at *4 (S.D. Ohio Sept. 30, 2022) (same); *Kenneth A. v. Comm'r of Soc. Sec.*, No. 3:22-CV-110, 2022 WL 17484356, at *5 (S.D. Ohio Dec. 7, 2022) (same); *Markcus C. v. Comm'r of Soc. Sec.*, No. 2:22-CV-1917, 2023 WL 1775612, at *5 (S.D. Ohio Feb. 6, 2023) (same), *report and recommendation adopted*, 2023 WL 2162261 (S.D. Ohio Feb. 22, 2023).

---

[6] The undersigned has also previously explained that limits to superficial, occasional, and brief interactions refer to limits in different dimensions of communication (*i.e.*, quality, frequency, and duration, respectively). *James M. G. v. Comm'r of Soc. Sec.*, No. 2:25-CV-300, 2025 WL 2502321, at *4 (S.D. Ohio Sept. 2, 2025).

As a result, District Courts have found reversible error when an ALJ discounts an opined superficial interaction limit only because it is purportedly vague or "not vocationally relevant." *See, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-CV-2396, 2021 WL 1345420, at *4–5 (S.D. Ohio Apr. 12, 2021), *report and recommendation adopted*, 2021 WL 1909701 (S.D. Ohio May 12, 2021). Likewise, District Courts have found reversible error where an ALJ credits a medical opinion or prior administrative finding that includes a superficial interaction limit but then omits that limit or substitutes another limit for it without adequately explaining why. *See, e.g.*, *Sue A. M. v. Comm'r of Soc. Sec*., No. 3:22-CV-171, 2022 WL 14346260, at *3–4 (S.D. Ohio Oct. 25, 2022), *report and recommendation adopted sub nom., Sue A. M. v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 17414973 (S.D. Ohio Dec. 5, 2022); *Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *5 (S.D. Ohio June 1, 2021), *report and recommendation adopted,* 2021 WL 2533191 (S.D. Ohio June 21, 2021).

These principles do not, however, establish reversible error in all cases. For instance, there is no reversible error when an ALJ discredits a superficial interaction for legitimate record-based reasons in addition to its purported vagueness. *See, e.g., Deana L. F.*, 2026 WL 1587259, at *3 (finding no reversible error where ALJ discounted a superficial interaction limit because it was not vocationally defined; ALJ also discounted it because record evidence showed a "greater capacity for interaction"); *Crystal Ann B. v. Comm'r of Soc. Sec.*, No. 2:25-CV-322, 2025 WL 2611969, at *6 (S.D. Ohio Sept. 10, 2025) (finding no reversible error where ALJ discounted a superficial interaction limit for vagueness; ALJ also discounted it because it was inconsistent with treatment records describing plaintiff as pleasant and cooperative).

Similarly, there is no reversible error when an ALJ discounts a superficial limit because it is purportedly vague but nevertheless includes limits in an RFC that adequately captures the

qualitative nature of a superficial interaction. *See, e.g.*, *Dickinson v. Comm'r of Soc. Sec.*, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020) (finding no reversible error where ALJ declined to incorporate an opined superficial interaction because it was "not vocationally relevant;" ALJ included a "no tandem task" limit that adequately addressed it), *report and recommendation adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020). *See also Aalijah v. Comm'r of Soc. Sec.*, 2024 WL 2315290, at *2 (S.D. Ohio May 22, 2024) (finding that a limit to no tandem or team tasks adequately accommodated a superficial interaction limit).

Finally, the Sixth Circuit has clarified that because superficial is not defined by regulation or agency guidelines, when an opining source does not define a superficial interaction limit, an ALJ may define that limit provided the ALJ's definition reasonably captures the qualitative nature of the restriction. *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *5 (6th Cir. June 6, 2025) (finding ALJ did not err where he "delineated specific social restrictions based on his understanding of what a 'superficial' contact limitation require[d] in this context").

Given these precepts, the undersigned concludes that the ALJ reversibly erred. Dr. Johnston found that Plaintiff was "able to concentrate, persist, and keep pace for simple tasks with brief, superficial interaction with others . . . ." (R. at 302, 313.) The ALJ discounted that finding solely because the terms "brief" and "superficial" purportedly lacked vocational definitions. (*Id*. at 32.) That explanation was inadequate. *See Deana L. F.*, 2026 WL 1587259, at *2; *Swank*, 2021 WL 1345420, at *4–5; *Dawn V.*, 2026 WL 2874064, at *6.

Moreover, the ALJ did not otherwise account for Dr. Johnston's brief, superficial interaction limits. The ALJ limited Plaintiff to occasional interactions with supervisors and coworkers. (R. at 27.) But this Court has found that an occasional limit addresses the frequency

of social interactions, while limits to superficial and brief interactions address the quality and duration of interactions, respectively. *See, e.g.*, *James M. G.*, 2025 WL 2502321, at *4 (discussing that limits to superficial, occasional, and brief interactions refer to quality, frequency, and duration of interactions, respectively); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639, at *4 (S.D. Ohio July 22, 2021) (collecting cases recognizing that a limitation to occasional interaction does not necessarily accommodate a separate limitation to superficial interaction), *report and recommendation adopted*, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021).

The undersigned, therefore, concludes that the ALJ erred when evaluating Dr. Johnston's brief, superficial interaction findings. The ALJ discounted those findings without an adequate explanation for doing so and did not otherwise accommodate them. As a result, the undersigned **RECOMMENDS** that remand is warranted on this basis.

Plaintiff also contends that the ALJ reversibly erred by failing to include in her RFC, or explain the omission of, the reviewers' finding that she "would do best in a work setting where . . . a supervisor is available if clarification is needed." (R. at 278, 288, 301, 312; Pl.'s Statement of Errors 9, ECF No. 8.) The undersigned disagrees. A statement about what might be beneficial or ideal does not constitute the type of recommended limit that an ALJ is required to assess or explain. *See Daniels v. Comm'r of Soc. Sec.,* No. 5:25-CV-02019, 2026 WL 1758268, at *9 (N.D. Ohio June 18, 2026) (finding no error where ALJ omitted limit to solitary duties without over-the-shoulder supervision; the medical source opined only that the claimant "would perform best" under those conditions and thus described an optimal rather than necessary work condition); *Horinek v. Saul*, No. 1:19-cv-2141, 2020 WL 4340987, at *9 (N.D. Ohio July 7, 2020) (finding no error where the AJL failed to explain why recommendations that Plaintiff

"would benefit from" certain working conditions were omitted from Plaintiff's RFC; the ALJ was not required to create an optimal work setting for Plaintiff), *report and recommendation adopted*, 2020 WL 4339327 (N.D. Ohio July 28, 2020); *Stephen T. C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-10821, 2024 WL 948592, at *5 (E.D. Mich. Mar. 5, 2024) (explaining that "when a medical opinion or prior administrative medical finding suggests working conditions that give a claimant 'the greatest chance of success'— rather than conditions the claimant requires to work—an ALJ need not include those conditions in his or her RFC finding."); *Hammons v. Comm'r of Soc. Sec.*, No. 2:21-cv-12933, 2023 WL 2263856 at *2 (E.D. Mich. Feb. 28, 2023) (finding that the "ALJ did not need to explain why she chose to incorporate only some of the doctors' recommendations because the recommendations opined on an optimal work environment from which Plaintiff 'may benefit'"). The undersigned, therefore, cannot conclude that remand is warranted on this basis.

## V. RECOMMENDED DISPOSITION

Accordingly, the undersigned concludes that the ALJ reversibly erred by rejecting Dr. Johnston's brief, superficial interaction limit solely because those terms purportedly lacked vocational definitions, and the ALJ did not otherwise accommodate those limits. It is, therefore, **RECOMMENDED** that the Court **OVERRULES** the Commissioner's non-disability determination and **REMAND** this matter.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE